UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

<u>**LETTER OPINION**</u>

June 26, 2008

<u>**Via Electronic Filing**</u>

James Langton, Esq.
Langton & Alter
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065

Jennifer Rosa, Esq.
Social Security Administration
Office of the General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

     Re: <u>**Rosa Diaz v. Commissioner of Social Security**</u>
        **Civil Action No.: 07-2276 (JLL)**

Dear Counsel:

  Presently before the Court is an appeal filed by Rosa Diaz (hereinafter "Claimant") seeking review of the Administrative Law Judge's ("ALJ") decision denying her Supplemental Security Income ("SSI") benefits. No oral argument was heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, this Court denies Claimant's appeal, and affirms the ALJ's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

  Claimant was born on July 24, 1955, and has an eighth grade education. Claimant alleges that she has been disabled as a result of severe orthopedic and neurological conditions, obesity, and diabetic and visual impairments, since at least January 11, 1995. (Compl., ¶ 6).

  As a result, on January 11, 1995, Claimant filed an application for SSI benefits. The application was denied initially and again upon reconsideration. A hearing was held before ALJ Richard L. DeSteno on March 24, 1998. ALJ DeSteno denied Claimant's application on September 9, 1998. On June 20, 2001, the Appeals Council denied Claimant's request for review. Thereafter,

Claimant brought a federal court action where the Commissioner's decision was reversed and remanded. An order was subsequently issued by the Appeals Council remanding the matter to the ALJ for additional proceedings. The Appeals Council noted in its order that Claimant had been granted SSI benefits on a February 2000 application. The time period at issue on remand was, therefore, between January 11, 1995 (the date on which Claimant filed her first application for SSI benefits) and February 14, 2000 (the date on which Claimant was awarded SSI benefits). A subsequent hearing was held on April 7, 2005. On April 29, 2005, ALJ DeSteno issued an unfavorable decision. On March 13, 2007, the Appeals Council denied Claimant's request for review. Claimant now appeals ALJ DeSteno's final administrative decision pursuant to 42 U.S.C. § 405(g).

## **LEGAL STANDARDS**

**A.**     **Disability Determination**

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Regulations has set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled:

> The sequential evaluation process is a series of five "steps" that are followed in a set order. If it is determined that the plaintiff is disabled or not disabled at a step, a decision is made and the evaluation will not go on to the next step. If a determination cannot be made that the plaintiff is disabled or not disabled at a step, the evaluation will go on to the next step. The five steps are as follows:
>
> (i) At step one, the Commissioner decides whether the plaintiff is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to step two.
>
> (ii) At step two, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is severe. If the impairment is not severe, the plaintiff is not disabled and the evaluation ends. If the plaintiff has a severe impairment, the analysis proceeds to the third step.
>
> (iii) At step three, the Commissioner must decide whether the plaintiff suffers

from a listed impairment. If the plaintiff meets a listed impairment requirement, she is disabled. If the plaintiff does not suffer from a listed impairment or its equivalent, then the analysis proceeds to step four.

(iv) Before considering step four, the Commissioner must first determine the plaintiff's residual functional capacity ("RFC"). At step four, the Commissioner determines whether based on plaintiffs RFC she can still do her past relevant work. If the plaintiff has the RFC to perform her past relevant work, she is not disabled. If she is unable to do any past relevant work, the analysis proceeds to the fifth step.

(v) Finally, at step five, the Commissioner must determine whether the plaintiff is able to do any other work available in the national economy, considering her RFC, age, education, and work experience. If the Commissioner cannot show that work exists then the plaintiff is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

**B.**     **Burden of Proof**

The five-step sequential evaluation involves a shifting burden of proof. See Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at step one that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant establishes this, she must next demonstrate, at step three, that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If she makes this showing then she is presumed disabled. If she cannot show that she meets or exceeds an impairment, then at step four she must show that her RFC does not permit her to return to her previous work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at step five; throughout steps one through four the burden lies entirely with the claimant. However, if the Commissioner cannot meet this burden, the claimant shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n.4 (D.N.J. 1995).

**C.**     **Standard of Review**

This Court must affirm the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 13839(c)(3). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, when the "[ALJ] is faced with

conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d. Cir. 1896)). The District Court must review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d. Cir. 1984). However, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1991). Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (explaining that review is limited to determining whether decision as a whole is arbitrary, capricious, or contrary to law). With this framework in mind, the Court turns now to the Claimant's arguments.

## LEGAL DISCUSSION

### A.   Summary of the ALJ's Findings

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from January 11, 1995 through February 14, 2000. At step two, the ALJ found that Claimant's impairments, namely lumbosacral strain, diabetes, migraine headaches, reduced visual fields and obesity, were severe during the relevant time period. However, the ALJ found Claimant's subjective complaints to be "not totally credible." (R. 289). At step three, the ALJ found that said impairments did not meet or medically equal any impairments listed in 20 C.F.R Part 404, Appendix 1, Subpart P. Consequently, he proceeded to step four. At step four, the ALJ found that Claimant had the RFC to perform sedentary work not involving exposure to heights or dangerous machinery. (R. 289). Because the ALJ found that Claimant had no definitive history of past relevant work, he proceeded to step five. At that point, the ALJ determined that there were a significant number of jobs in the national economy which Claimant was capable of performing, including, but not limited to, a document preparer, an assembler, a sorter, or a parts cleaner. (R. 290). As a result, the ALJ concluded that Claimant was not disabled during the time period between January 11, 1995 through February 14, 2000. (Id.).

### B.   Analysis

     1.   The ALJ's Determination at Step Three

Claimant argues that she is entitled to presumptive disability during the time period at issue because she meets paragraph 2.03 of the Commissioner's Listings. (Pl. Br. at 22). Plaintiff admittedly fails, however, to provide any legal basis for her assertion that her limited vision meets Paragraph 2.03. Id. at 24. The only evidence contained in the record and referred to by Claimant in support of such an assertion is a handwritten correspondence between two ophthalmologists, dated "4/5/00" and "9/5/00." Id. at 23. However, the time period at issue on remand was between January 11, 1995 and February 14, 2000. Thus, the Court finds Claimant's argument with respect to such correspondence unpersuasive. Similarly, Claimant directs the Court to a report by the Eye Institute of Essex indicating "markedly constricted visual field examination (R. 406-407), immune to the medical expert's expertise, which clearly showed 'hemianopsia', bilaterally which ultimately contributed to glaucoma." (Pl. Br. at 17). Again, however, the Court notes that this report is dated

"APR 14 2000," which is, of course, after the relevant time period at issue. (R. 403). Accordingly, the Court finds that Claimant has failed to meet her burden of providing any evidence that her vision problems met the criteria outlined by Paragraph 2.03 during the relevant time period, namely between January 11, 1995 to February 14, 2000. The Court, therefore, finds that the ALJ's step three analysis is, in fact, supported by substantial evidence inasmuch as there was no evidence contained in the record supporting a finding that the vision problems alleged by Claimant met or equaled a listed impairment during the relevant time period at issue.

    2.    The ALJ's Determination at Steps Four and Five

Disability Determination

Claimant also argues that the ALJ's rejection of a treating physician's opinion as to Claimant's disability is not supported by substantial evidence. (Pl. Br. at 28). In support of this argument, Claimant notes that her physician, Dr. Thomas Ortiz, opined on March 13, 1997, that, "[i]t [was his] firm opinion that [claimant] is physically and mentally impaired and dysfunctional and is unemployable and disabled from work at the 100% level." (R. 242). Claimant now argues that "there appears to be no medical evidence which would tend to contradict the opinion of Dr. Ortiz," and therefore, the ALJ's failure to take Dr. Ortiz's opinion into consideration constitutes error. (Pl. Br. at 29).

The Court has considered Claimant's argument and finds such argument to be meritless. The determination of disability is "reserved to the Commissioner because [it is an] administrative finding that is dispositive of a case." 20 C.F.R. § 416.927(e). "[The Commissioner is] responsible for making the determination or decision about whether [claimant meets] the statutory definition of disability. […] A statement by a medical source that [claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [claimant is] disabled." 20 C.F.R. §416.927(e)(1). Thus, the ALJ was entitled to find, as he did, that Claimant was not disabled, despite Dr. Ortiz's opinion. Claimant's argument to the contrary is, therefore, unfounded.

Consideration of Claimant's Subjective Pain

At the original administrative hearing, Claimant testified that her subjective pain was so severe that it prevented her from doing any household chores, including but not limited to, cooking and cleaning. The ALJ rejected such subjective complaints of pain on the basis that "the degree of functional compromise alleged is not found to be corroborated by the objective medical documentation." (R. 287). On appeal, Claimant argues that the ALJ's rejection of Claimant's subjective complaints of pain "stands outside the legal requirements of analysis." (Pl. Br. at 34). In particular, Claimant argues that the ALJ's pain analysis "is unhinged from any medical documentation" and fails to abide by the requisite guidelines because the ALJ's rejection of Claimant's subjective complaints is "the product merely of suspicion and reflexive rejection." (Pl. Br. at 34). Based on the reasons that follow, this Court disagrees.

20 C.F.R. § 416.929(a) provides, in relevant part, that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."[1] However, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Salles v. Comm'r Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007) (emphasis added).

Here, after reviewing the medical records and considering Claimant's testimony regarding her subjective complaints of pain, the ALJ found Claimant's purported debilitation in the household to be incompatible with the objective medical evidence contained in the record. (R. 287). In particular, the ALJ referred to two specific pieces of evidence contained in the record which disproved Claimant's subjective complaints regarding her ability to function as a caregiver in her household. For instance, the ALJ noted that although Claimant had testified at the original administrative hearing that her subjective pain was so severe that it prevented her from doing "anything" around the house,[2] a report by Dr. Luis Zeiguer, indicated that Claimant routinely gets the children ready for school, cooks and works on household chores. (R. 244). Similarly, the ALJ referred to a form Request for Reconsideration submitted by Claimant to the Department of Health and Human Services, wherein she wrote that her uncle had to have his leg amputated and that she, therefore, was responsible for taking care of him. (R. 81-83). Based on the foregoing, this Court finds ample evidence that the ALJ's assessment of Claimant's subjective pain was based on substantial evidence inasmuch as certain pieces of objective medical evidence contained in the record did, in fact, contradict her subjective complaints.

## ALJ's Use of Medical Expert Testimony[3]

By way of Order from the Appeals Council, dated September 21, 2004, the ALJ was directed to:

> Obtain evidence from a medical expert to clarify whether, prior to February 2000, the Claimant's impairments meet or equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. 416.927(f) and Social Security Ruling 96-6p). The

---

[1] See also 20 C.F.R. §§ 404.1529(c).

[2] See R. at 54-57.

[3] The Court acknowledges that use of the medical expert's testimony was relevant to other steps in the ALJ's five-step sequential analysis. For organizational purposes only, the Court has included Claimant's more general argument regarding the ALJ's alleged failure to utilize an ophthalmologist as the medical expert in conjunction with arguments raised regarding steps four and five of the ALJ's analysis.

6

> medical expert may also address the issue of onset of disability in accordance with Ruling 83-20.

(R. 297). At the administrative hearing, Martin Fechner, M.D., a physician specializing in internal medicine, testified regarding Claimant's alleged impairments, in accordance with the Appeals Council's Order. Claimant now argues, on appeal, that the ALJ erred in utilizing a general internist – rather than a an ophthalmologist – as the testifying expert. (Pl. Br. at 14-15). In particular, Claimant argues that "when the Appeals Council ordered the testimony of a medical expert it almost certainly referred to an ophthalmological medical expert who might opine, pursuant to medical probability, as to the origin and likely onset of plaintiff's visual impairment." (Pl. Br. at 14). Moreover, according to Claimant, "the Appeals Council remand assumed that the ALJ would procure an expert who was an expert in the particular field of medicine anticipated by the Appeals Council remand order and by the District Court remand." Notably, Claimant cites to no legal authority in support of such a proposition.

The Court has considered Claimant's argument and finds that (a) there is no indication on the face of the Order of the Appeals Council that the ALJ was required to use the testimony of an ophthalmologist as the medical expert on remand, and (b) in any event, the order of the Appeals Council was followed because a medical expert's testimony was, indeed, used and that medical expert, Dr. Martin Fechner, in fact, had the appropriate expertise to formulate Claimant's RFC for the period of time at issue. (R. 520-521). Properly qualified medical experts of different specialties can, and often do, offer opinions about medical conditions not within their specialties. The mere fact that the medical expert utilized here was not an ophthalmologist does not, alone, warrant a reversal or remand.[4]

### Consideration of Claimant's Obesity

Claimant also makes the argument that the ALJ erred in its analysis and utilization of Claimant's obesity as a relevant factor. In particular, Claimant contends that, despite the medical expert diagnosing Claimant as obese, the ALJ's decision thereafter "doesn't acknowledge its obligations under the commissioner's obesity analysis guidelines, never articulates the restrictions caused by the obesity and never factors the severity of the impairment into the disability calculus." (Pl. Br. at 16). This Court disagrees. Rather, the Court finds sufficient evidence contained in the record which supports the finding that the medical expert did, in fact, take into account Claimant's obesity as a factor when calculating Claimant's RFC. (R. 520-21). For instance, the medical expert specifically noted that "because of the combination of her exogenous obesity and the orthopedic problem, the diabetes, that she would be in the sedentary area." (Id.). The ALJ acknowledged the medical expert's finding of obesity and its inclusion in the medical expert's analysis regarding Claimant's RFC. (R. 285). Because the ALJ's ultimate disability determination was based upon

---

[4] Claimant has given this Court no legal basis on which to find otherwise.

– and largely consistent with – the medical expert's RFC analysis, Claimant's obesity was clearly taken into consideration by the ALJ in rendering his decision.

### Hypothetical Presented to Vocational Expert

Lastly, Claimant argues that the hypothetical question posed by the ALJ to the vocational expert erroneously failed to include all of Claimant's impairments/restrictions. (Pl. Br. at 15). By way of background, the record reflects that, after reviewing Claimant's medical history, the medical expert made a determination as to Claimant's RFC. In particular, he testified that "because of the combination of [Claimant's] exogenous obesity and the orthopedic problem, the diabetes, that she would be in the sedentary area. I believe she could lift 10 pounds occasionally, stand or walk an aggregate of two hours in an eight-hour day, sit six hours in an eight-hour day with appropriate breaks." (R. 520-521.) The ALJ then determined that Claimant retained the RFC to perform sedentary work – a finding consistent with the opinion of the medical expert. (R. 286). The ALJ then asked the vocational expert the following hypothetical question: "whether jobs would have existed in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined." (R. 288). Taking into account Claimant's RFC, age, work experience, and education, the vocational expert determined that other jobs did, in fact, exist in the national economy that Claimant was capable of performing. (R. 541).

On appeal, Claimant now argues that the information provided to the vocational expert in the hypothetical was insufficient. (Pl. Br. at 41). Claimant relies on Chrupcala v. Heckler, wherein the Third Circuit explained that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." 829 F.2d 1269, 1276 (3d Cir. 1987). In this regard, Claimant asserts that certain ailments from which she suffered were erroneously omitted from the hypothetical that was given to the vocational expert. (Pl. Br. at 41-42). Such ailments include her obesity, her documented pain, the extent of her peripheral blindness, her migraine headaches, her uncontrolled diabetes, her cervical radiculopathy and her psycho-motor retardation, as well as her treating physician's opinion regarding her disability. (Id.).

The Court has considered Claimant's argument and finds that the limitations that Claimant alleges were erroneously omitted – such as her subjective complaints of pain and her treating physician's opinion regarding her disability – were either (a) not limitations accepted by the ALJ as being substantiated by the evidence contained in the record,[5] or (b) were taken into account in

---

[5] See, e.g., R. at 286 ("Although there was a history of migraine headaches during the relevant time period, there is no indication that they were of such severity or frequency to have been preclusive of work activity.").

fashioning Claimant's RFC.[6]  As a result, the Court finds that it was not necessary that each of Claimant's alleged impairments be included in the hypothetical presented to the vocational expert.[7]

## CONCLUSION

For the reasons discussed above, the Court denies Claimant's appeal and affirms the decision of the Administrative Law Judge.

An appropriate Order accompanies this Opinion.

      /s/ Jose L. Linares
      JOSE L. LINARES,
      UNITED STATED DISTRICT JUDGE

---

[6] See, e.g., R. at 285 ("She was 4'9" and weighed 170 pounds and thus had exogenous obesity.").

[7] To the extent that the ALJ did err in failing to reflect all of Claimant's substantiated impairments in his hypothetical to the vocational expert, any such error would be harmless inasmuch as the vocational expert was asked to consider the RFC which was, in fact, determined by taking Claimant's substantiated impairments into consideration. See generally Rivera v. Comm'r of Soc. Sec., 164 Fed. Appx. 260, 262-263 (3d Cir. 2006) (addressing harmless error).